UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

MATTHEW BROWN (D-1),

    Defendant-Petitioner.

_____/

Criminal Case No. 10-20233
Civil Case No. 15-11564
HON. DENISE PAGE HOOD

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE,
ORDER DISMISSING CIVIL CASE NO. 15-11564
and
ORDER DENYING CERTIFICATE OF APPEALABILITY**

**I.   BACKGROUND**

On December 16, 2011, a jury found Defendant Matthew Brown guilty of knowingly possessing images of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (Count One) and guilty of receiving images of child pornography, 18 U.S.C. § 2252A(a)(2) (Count Two) as alleged in First Superseding Indictment. (Doc. No. 48, Verdict Form) Brown was sentenced to a term of 60 months on each count to run concurrently, followed by 10 years on supervised release on each count to run concurrently. (Doc. No. 89, Amended Judgment) A Notice of Appeal was filed by Brown on January 21, 2013. (Doc. No. 80) The Sixth Circuit Court of Appeals affirmed Brown's conviction and Judgment on January 30, 2014 and the Mandate

issued on February 21, 2014. (Doc. Nos. 94, 95)

Brown filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on April 30, 2015. (Doc. No. 97) Brown claims his trial counsel was ineffective. The Government filed a response brief in this matter. For the reasons set forth below, the Court denies Brown's Motion to Vacate, Set Aside, or Correct Sentence.

**II.  ANALYSIS**

   **A.  Standard of Review**

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). Motions brought under 28 U.S.C. § 2255 are subject to a one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Dunlap v. United States,* 250 F.3d 1001, 1004-05 (6th Cir. 2001). The AEDPA established a one-year limitations period for § 2255 motions, generally running from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). When a movant does not pursue a direct appeal to the court of appeals, the conviction becomes final on the date the time for filing such an appeal expires. *Sanchez-Castellano v. United States,* 358 F.3d 424, 428 (6th Cir. 2004). In order to prevail in a § 2255 motion, a petitioner "must allege three bases: (1) an error of

constitutional magnitude; (2) a sentence imposed outside of the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir. 2001).

A court may not conduct a collateral review of a judgment where the issues for review have been decided on direct appeal. *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996). A court also may not conduct a collateral review of an issue that has been procedurally defaulted by the defendant's failure to raise the grounds for review on direct appeal. *Massaro v. United States,* 530 U.S. 500, 504 (2003). Section 2255 is not a substitute for a direct appeal and a defendant cannot use it to circumvent the direct appeal process. *United States v. Frady,* 460 U.S. 152, 164-65 (1982); *Elzy v. United States,* 205 F.3d 882, 884 (6th Cir. 2000). Where a defendant fails to raise claims on direct appeal and attempts to raise them in a § 2255 motion, the defendant must show good cause for the failure to raise the claims and establish prejudice or the defendant must show he or she is actually innocent. *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003).

The court of appeals typically will not review a claim of ineffective assistance of counsel on direct appeal except in rare cases where the error is apparent from the existing record. *United States v. Lopez-Medina,* 461 F.3d 724,

737 (6th Cir. 2006). Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. A defendant under the Sixth Amendment has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two prong test for ineffective counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id*. "There is a strong presumption that legal counsel is competent." *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Counsel is not required to raise futile challenges in order to avoid a claim of ineffective assistance. *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996).

In his motion, Brown alleges an error of constitutional magnitude–that his constitutional right to effective assistance of counsel under the Sixth Amendment was violated. Brown raises four arguments in support of his ineffective assistance of trial counsel claim: 1) trial counsel failed to file a motion to suppress regarding incriminating statements Brown made when the federal agents detained him in his bedroom during the execution of the search warrant without *Miranda* warnings; 2) trial counsel failed to prepare Brown to testify on his own behalf; 3) trial counsel failed to comprehensively discuss the merits of a possible plea between the initial arraignment in May 2010 and before the superseding indictment in March 2011; and, 4) trial counsel failed to argue the admissibility of exculpatory statements made by Brown and his wife under the residual exception of the Rule 807 of the Federal Rules of Evidence. Each is addressed below.

**B.     Motion to Suppress/*Miranda***

Brown claims his trial counsel was ineffective when he did not file a motion to suppress the statements made by Brown while he was detained in his bedroom

during the execution of the search warrant and without informing him of his rights under *Miranda*. The Government responds that raising such a motion would have been futile since *Miranda* warnings are only required in cases of custodial interrogation. In reply, Brown cited the Government's response, not the trial transcript, that the agents testified Brown was not given *Miranda* warnings. (Doc. No. 102, Pg ID 2153) To contradict the Government's claim that the agents testified at trial that Brown was not given the *Miranda* warnings, Brown submitted a copy (with his reply brief) of a grand jury transcript wherein a different agent testified Brown waived his *Miranda* rights and signed a form. (Doc. No. 102, Pg ID 2154, 2170)[1]

The Court's review of the Government's response brief shows that the Government did not argue that no *Miranda* warnings were given. The Government only responded to Brown's argument in his initial motion by stating that "Brown now posits that his lawyer should have attempted to suppress these statements by

---

[1]Rule 6(e) of the Rules of Criminal Procedure provides detailed provisions for maintaining the secrecy of the grand jury proceedings. Fed. R. Crim. P. 6(e)(2), (3). "The court may authorize disclosure–at a time, in a manner, and subject to any other conditions that it directs–of a grand jury matter: (i) preliminarily to or in connection with judicial proceeding; (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "Records, orders and subpoenas relating to grand jury proceedings must be kept under seal to the extent and as along as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). There is no record on the docket which shows that Defendant sought authority from the Court to unseal the grand jury transcripts to be filed on the public docket.

challenging the failure of the agents to advise Brown of his *Miranda* warnings before speaking with him." (Doc. No. 99, Pg ID 2132) Brown's initial § 2255 motion claimed that Brown's statements in the bedroom of his house "were made without Miranda warnings." (Doc. No. 97, Pg ID 2117)

Under *Miranda*, statements made by a defendant during a custodial interrogation are inadmissible at trial unless the prosecution can demonstrate the use of established procedural safeguards effective to secure the defendant's Fifth Amendment privilege against incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). A defendant is "in custody" for purposes of Miranda when given the circumstances surrounding the defendant's encounter with police, a reasonable person in his shoes would have felt that he was not at liberty to terminate the encounter. *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). The "ultimate inquiry" in custody determine is, "was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Interrogation" occurs whenever police say any words or take any actions that they should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980). A routine, matter-of-course statement, such as "we've got good information on you," cannot be sufficiently compulsive to qualify as "interrogation" under *Miranda*.

*United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000). Voluntary, spontaneous declarations are not the product of interrogation. *See United States v. Murphy*, 107 F.3d 1199 (6th Cir. 1997). The Supreme Court has authorized the routine detention of "occupants" of a residence during the execution of a search warrant. *See Michigan v. Summers*, 452 U.S. 692 (1981).

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Giacalone,* 853 F.2d 470, 482 (6th Cir. 1988). A defendant must make an initial showing of contested facts to be entitled to an evidentiary hearing. *Id.* at 483. The voluntariness of a confession need be established only by a preponderance of the evidence and the waiver of the protections of *Miranda* requires no higher burden of proof. *Colorado v. Connely*, 479 U.S. 157, 168-69 (1986). The government need only establish that it was more likely than not that a defendant was read his *Miranda* rights and acknowledged that he had a right to remain silent and that any statement given freely and voluntarily without any compelling influences is admissible evidence. *Miranda,* 384 U.S. at 478. Courts look to the totality of the circumstances to determine whether a confession is voluntary. *Withrow v. Williams*, 507 U.S. 680, 683 (1993).

Although no motion to suppress was filed by Brown's trial counsel regarding his statements based on failure to provide a *Miranda* warning, the issue of the admissibility of Brown's statements made to the agents during the execution of a search warrant was raised through the Government's Motion in Limine as to these statements and in Brown's Motion for Judgment of Acquittal and/or New Trial (Doc. Nos. 33, 59) and at trial.

The testimony at trial shows that Brown agreed to speak to the agents in the master bedroom. (Doc. No. 65, Tr. 12/7/11, Pg ID 565-66, 570, 628, 672; Doc. No. 66, Tr. 12/8/11, Pg ID 684, 891, 893) Brown was allowed to smoke a cigarette in his master bedroom and outside on the front porch. (Doc. No. 65, Tr. 12/7/11, Pg ID 616) The general tone of the conversation was "very calm" and Brown was "being cooperative." (Doc. No. 65, Tr. 12/7/11, Pg ID 636) Brown asked questions of the agent and wanted to know what the next steps would be. (Doc. No. 66, Tr. 12/8/11, Pg ID 669) Brown was cooperative, but the agent could not recall that Brown was asked about specific items. (Doc. No. 66, Tr. 12/8/11, Pg ID 680-81) The agent testified that his report did not include the questions he asked Brown, but that Brown admitted to downloading and viewing approximately 100 images of child pornography. (Doc. No. 66, Tr. 12/8/11, Pg ID 684) The agent further testified that Brown told his wife that the FBI was conducting a search of

the residence because Brown had looked at inappropriate pictures on the computer and that Brown told his wife that it was of child pornography. (Doc. No. 66, Tr. 12/8/11, Pg ID 697-98) The testimony of Brown's wife at trial was that she and Brown were asking questions of the agents while in the kitchen. (Doc. No. 70, Tr. Pg ID 1529-30)

Brown testified that he was allowed to go to the master bedroom to put on a sweat shirt and jeans and that he was asked if he had any weapons in the house. (Doc. No. 70, Tr. 12/15/11, Pg ID 1585) He indicated he was in the bedroom with the agents for about half an hour and there was a lot of small talk. (Doc. No. 70, Tr. 12/15/11, Pg ID 1587-88) During Brown's testimony, there was a long discussion with the Court and the Government as to whether Brown's questions to the agents and the questions asked by the agents were admissible. (Doc. No. 70, Tr. 12/15/11, Pg ID 1589-1611) Brown was allowed to testify if the agent asked Brown while in the master bedroom the question of whether he viewed child pornography and Brown's response was the question was never asked. (Doc. No. 70, Tr. 12/15/11, Pg ID 1613) Brown testified that he asked a lot of questions of the agents, such as "why" and "what is going on." (Doc. No. 70, Tr. 12/15/11, Pg ID 1614) Brown indicated he was cooperating and was going to help the agents find whatever they needed to find and get out of the house quickly. (Doc. No. 70,

Tr. 12/15/11, Pg ID 1614) Brown further indicated that he requested they all go downstairs to have coffee and that there was no problem at all with his request to go downstairs. (Doc. No. 70, Tr. 12/15/11, Pg ID 1614-15) At the time they left the master bedroom to go downstairs, Brown testified he had no clear understanding what the search was about. (Doc. No. 70, Tr. 12/15/11, Pg ID 1615) He stated he was not concealing anything from the agents and that there was nothing harmful going on. (Doc. No. 70, Tr. 12/15/11, Pg ID 1616) Brown asserted that he had a clear recollection of the conversations with the agents which occurred in the master bedroom and all throughout the house. (Doc. No. 70, Tr. 12/15/11, Pg ID 1617) While in the master bedroom and before they went downstairs, Brown reiterated later in his testimony that he did not know what the search was about or what the agents were looking for. (Doc. No. 70, Tr. 12/15/11, Pg ID 1617) Brown testified that contrary to the agents' testimony, he did not admit to "something with child pornography up in the bedroom." (Doc. No. 70, Tr. 12/15/11, Pg ID 1623)

It may be that Brown was indeed given his *Miranda* rights based on the evidence submitted by Brown from a grand jury hearing and that is the reason why his trial counsel did not seek to suppress any incriminating statement Brown may have made while in the bedroom. Even if no *Miranda* warnings were given,

Brown submitted no credible evidence that he was in any way coerced, abused, or subject to compulsion sufficient to overbear his will to resist. *See Ledbetter v. Edwards*, 35 F.2d 1062, 1067 (6th Cir. 1994). To the contrary, the evidence at trial regarding voluntariness shows Brown was in the bedroom for about 30 minutes, that he was able to smoke a cigarette while in the bedroom, that he did not know what was going, that he asked a lot of questions of the agents, that the agents did not ask him about child pornography, that he was being cooperative, and when Brown requested to go downstairs the agents had no problems with his request and Brown was allowed to go downstairs. Brown has not shown that the failure to file a motion to suppress by trial counsel would have resulted in the suppression of any statements and that the result of the proceeding would have been different. Brown cannot meet either prong of the *Strickland* test that trial counsel's performance was unreasonable or that Brown was prejudiced by the failure to file a motion to suppress based on failure to give *Miranda* warnings.

    **C.**    **Preparation for Brown's Testimony**

Brown next argues that his trial counsel failed to prepare him for his testimony where the testimony was centered on whether or not Brown intended to violate the law as opposed to whether or not Brown knowingly possessed and/or knowingly received images of child pornography. Brown asserts that his trial

counsel prepared his wife to testify, but that only a little time was taken to prepare Brown for his testimony. Brown claims there was only a "very short" recess before Brown took the stand. The Government responds that it is unclear as to how these two theories of defense are materially distinct, but nevertheless, Brown's argument mischaracterizes the defenses he offered to the jury.

The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself. U.S. CONST., amend. V. The right of a defendant to take the stand is fundamental and may only be waived by the defendant himself. *Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1 (1977); *United States v. Webber,* 208 F.3d 545, 550-51 (6th Cir. 2000). Defense counsel's role is to advise the defendant as to whether to testify, but the ultimate decision rests with the defendant. *Webber,* 208 F.3d at 551. A generalized assertion that counsel was unprepared for trial is not sufficient to demonstrate either prong of the *Strickland* test. *Boss v. United States,* 2007 WL 1875864 at *3 (W.D. Mich. June 8, 2007) (citing *Cunningham v. United States,* No. 96-3874, 1998 WL 228028 at *3 (6th Cir. Apr. 27, 1998)).

Brown does not argue that he was denied his fundamental right to testify. Brown instead argues his trial counsel was ineffective because he did not prepare him on how to testify that he did not knowingly possess child pornography, instead

of his testimony at trial that he did not intend to violate the law. Brown's argument in his reply brief is that his testimony does not cover the essential element of knowingly possessing or receiving child pornography. (Doc. No. 102, Pg ID 2157) This argument is a sufficiency of evidence argument, which was already addressed and dismissed by the Sixth Circuit on direct appeal. (Doc. No. 94) Brown has not offered an alternative testimony which would have better addressed the element of knowingly possessing or receiving child pornography, other than what he testified to at trial. Brown has failed to show that his trial counsel's performance regarding preparing Brown for his testimony was deficient and how a different line of questioning would have resulted in a different outcome. Brown has not met either prong of *Strickland* as to this argument.

### D. Discuss Plea to Possession Charge Only

Brown's third issue raised in his § 2255 motion is that his trial counsel failed to adequately inform him of a plea to possession only, prior to the superseding indictment which included a second charge of receiving images of child pornography with a mandatory statutory minimum of 60 months' incarceration. The Government responds that Brown had nearly one year to discuss the merits of a possible plea offer as to possession only. The Government asserts that it superseded the indictment adding a second count of receipt of child pornography

seven months after the initial plea offer.

The *Strickland* test applies in the plea-bargaining context, where the petitioner "need only show a reasonable probability that he would have pleaded differently." *Griffin v. United States,* 330 F.3d 733, 737 (6th Cir. 2003). A defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment. *See Turner v. State,* 858 F.2d 1201, 1205 (6th Cir. 1998).

Brown admits that his trial counsel relayed the plea offer to him. In his reply, he argues that he was ill-advised as to the merits of his defense based on his expert's testimony and that his counsel would have been able to introduce exculpatory evidence through his wife's testimony. Brown's insistence that he would not plea to an offense which would require him to register as a sex offender was the main reason why he decided against accepting the plea offer. This reason fails to show that Brown would have accepted the plea, since waiver of the requirement to register as a sex offender was not agreed to by the Government. Brown fails to show any prejudice since he cannot show that any conviction based on the plea offer would not have subjected him to the Sex Offender Registration and Notification Act which became law in July 2006. *See Reynolds v. United States,* 132 S.Ct. 975 (2012). Brown has not shown his trial counsel was

ineffective since Brown insisted he would only agree to a plea offer if he was not required to register as a sex offender. Brown has not met either prong of *Strickland* as to his counsel's performance in negotiating or informing Brown of the plea offer from the Government.

### E. Exculpatory Statements under Fed. R. Evid. Rule 807

Brown's final issue raised in his § 2255 motion is that his counsel failed to argue the admissibility of exculpatory statements under Fed. R. Evid. 807, the residual clause exception. Brown and on his behalf, by his wife, assert that they made certain exculpatory statements while they were both interviewed by the FBI agents. Brown claims that his exculpatory testimony would have exonerated him because the testimony would have explained the statements he made to the FBI agents while being interrogated in his bedroom. The Government responds that although Brown's trial counsel offered multiple theories for the admission of his client's statements at trial, this specific residual clause argument was not raised at trial. However, the Government argues that Brown's appellate counsel raised this specific residual clause argument on appeal which was "swiftly" rejected by the Sixth Circuit.

At trial, the admission of Brown's statements to the agents in the bedroom and the questions posed by the agents were extensively argued. (Doc. No. 70, Tr.

16

12/15/11, Pg ID 1589-1611) The Sixth Circuit addressed the admissibility of Brown's and his wife's statements as argued by his appellate counsel and found that any error in excluding additional testimony concerning questions and responses was harmless because the proposed testimony was unlikely to affect the outcome of the trial. (Doc. No. 94) Because the Sixth Circuit has ruled on the same argument raised by appellate counsel as to the admissibility of the statements on direct appeal, this Court may not conduct a collateral review of a judgment where the issues for review have been decided on direct appeal. *DuPont,* 76 F.3d at 110-11.

In any event, trial counsel did raise the admissibility of Brown's statements under the residual clause of Rule 807 and Rule 803(3) in his written Amended Motion for Judgment of Acquittal and/or New Trial before this Court, which was denied. (Doc. No. 59, Pg ID 249; Doc. No. 74) Brown's argument that his trial counsel was ineffective for failing to raise the Rule 807 argument is without merit since it was raised before this Court.

### F.    Summary

Based on the above analysis, the Court finds that Brown failed to show that his trial counsel's performance was deficient under either prong of the *Strickland* test. Brown is not entitled to relief under § 2255.

### III. CERTIFICATE OF APPEALABILITY

Rule 22 of the Federal Rule of Appellate Procedure provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2225 Proceedings, which was amended as of December 1, 2009, requires that a district court must issue or deny a certificate of appealability when it enters a final order. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability,* 106 F.3d 1306, 1307 (6th Cir. 1997).

For the reasons set forth above, the Court finds that a certificate of appealability will not be issued in this case since the arguments raised by Brown in his § 2255 motion are without merit.

### IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 10-20233, Doc. No. 97, filed April**

**30, 2015]** is **DENIED.**

IT IS FURTHER ORDERED that the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 15-11564]** is **DISMISSED with prejudice.** The case is and designated as **CLOSED** on the Court's docket**.**

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  May 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager